_____

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 7, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **KENNY C. WEBSTER, JR. AND HELENA M. WEBSTER,** | **CASE NO. 15-03467-NPO** |
| **DEBTORS.** | **CHAPTER 7** |
| **MCCOMB FINANCIAL, INC.** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 16-00013-NPO** |
| **HELENA MCDANIEL WEBSTER** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION FOR ATTORNEY'S FEES

This matter came before the Court for hearing on June 20, 2017 (the "Hearing"), on the Motion for Attorney's Fees (the "Motion") (Adv. Dkt. 90)[1] filed by Kenny C. Webster ("Kenny Webster") and Helena M. Webster ("Helena Webster" or, together with Kenny Webster, the "Debtors"), the original defendants in the Adversary,[2] and the Plaintiff's Response to Motion for

---

[1] The docket in the above-styled adversary proceeding (the "Adversary") will be cited as "(Adv. Dkt. ___)." Citations to the docket in the related chapter 7 bankruptcy case, Case No. 15-03467-NPO (the "Bankruptcy Case"), will be cited as "(Bankr. Dkt. ___)."

[2] The Order Granting Kenny C. Webster, Jr.'s Motion to Dismiss (the "Order") (Adv. Dkt. 77) was entered on March 22, 2017, dismissing Kenny Webster as a defendant in the Adversary.

Attorney's Fees Dk #90 (the "Response") (Adv. Dkt. 93) filed by the plaintiff, McComb Financial, Inc. ("McComb Financial"). Also before the Court was the Affidavit (the "Affidavit") (Adv. Dkt. 94) of Arnold D. Lee ("Lee") filed by the Debtors. At the Hearing, Lee represented the Debtors and L. Jackson Lazarus ("Lazarus") represented McComb Financial. Having fully considered the matter and being fully advised in the premises, the Court finds as follows:

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of the Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Motion was proper under the circumstances.

## Facts

McComb Financial is a small finance company that makes consumer loans, usually for amounts less than $5,000.00 (Resp. at 2). On August 23, 2011, Helena Webster borrowed $3,802.34 from McComb Financial at an annual interest rate of 34.55% (Debtor's Hr'g Ex. 1), followed by $5,332.00 on May 15, 2012, at a 34.65% annual rate of interest (Debtor Hr'g Ex. 2), $5,633.33 on July 8, 2013, at a 34.62% annual rate of interest (Debtors Hr'g Ex. 3), and $4,701.68 on August 19, 2014, at a 33.17% annual rate of interest (Debtors Hr'g Ex. 4). The collateral for each of these loans was a 1995 MAGNA Pole Trailer (the "Trailer"), which was titled solely in Helena Webster's name (Adv. Dkt. 77 at 2, 7).[3]

### I. Bankruptcy Case

After Helena Webster entered into the four (4) loan transactions as outlined above, the Debtors filed a joint voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code on

---

[3] Mississippi law does not require a pole trailer to be titled. MISS. CODE ANN. § 63-21-11(1)(h).

November 6, 2015 (Bankr. Dkt. 1). In their statements and schedules (Bankr. Dkt. 3), the Debtors listed McComb Financial as an unsecured creditor with a claim in the amount of $12,792.00. (Bankr. Dkt. 3 at 14).[4] After the chapter 7 panel trustee issued a report stating there was no property available for distribution from the estate over and above that exempted by law, the Debtors were granted a discharged under 11 U.S.C. § 727 on April 11, 2016. (Bankr. Dkt. 45). On March 6, 2016, prior to the discharge in the Bankruptcy Case, McComb Financial filed the Complaint to Declare Certain Debt Non-Dischargeable (the "Complaint") (Adv. Dkt. 1). The subsequent discharge did not discharge the debt to McComb Financial pending the outcome of the Adversary.

## II.    Adversary

The Complaint named both Kenny Webster and Helena Webster as defendants and alleged that the Trailer had been intentionally destroyed and sold for scrap as early as 2009, before Helena Webster first pledged it as collateral. (Compl. at 2). McComb Financial alleged that it relied on Helena Webster's representation "that she had valid and existing collateral" when it made the loans, that Helena Webster knew at the time that the representation was false and that she made the false representation with the intent of deceiving McComb Financial, and that it would not have made the loans had it known that Helena Webster did not actually possess the Trailer. (*Id.*). As such, McComb Financial requested that Helena Webster's debt to McComb Financial in the amount of approximately $9,545.71, together with attorney's fees, interest, and costs, be declared

---

[4] In the Amended Complaint to Declare Certain Debt Non-Dischargeable (the "Amended Complaint") (Adv. Dkt. 33), McComb Financial alleged that the "[t]otal debt of [the Debtors] to McComb Financial is approximately $9,545.71." (Compl. at 2).

Page 3 of 17

non-dischargeable under § 523(a)(2)(A) and (B), as to both Helena Webster and Kenny Webster.[5] (*Id.*). With the Court's permission, McComb Financial filed the Amended Complaint on August 4, 2016, to add fraudulent conveyance as an additional count. McComb Financial did not allege any wrongdoing by Kenny Webster in the Complaint or in the Amended Complaint. On January 31, 2017, Kenny Webster filed the Defendant Kenny C. Webster, Jr.'s Motion to Dismiss (Adv. Dkt. 69), alleging that the Amended Complaint should be dismissed against him for failure to state a claim for relief under Rule 7012 of the Federal Rules of Bankruptcy Procedure. The Court entered the Order on March 22, 2017, holding that McComb Financial failed to plead facts against Kenny Webster in the Amended Complaint that would make the claim against him plausible on its face. (Order at 7). Based on the facts plead, relief against Kenny Webster was not possible because the debt was not owed by Kenny Webster, and a non-existent debt cannot be held non-dischargeable. (*Id.*).

A trial on the adversary was set to take place on June 2, 2017. (Adv. Dkt. 79). On May 5, 2017, McComb Financial filed the Plaintiff's Motion to Dismiss Adversary Proceeding (the "Motion to Dismiss Adversary") (Adv. Dkt. 86). In the Motion to Dismiss Adversary, McComb Financial asserted that an asset search suggested that the recovery of any money from Helena Webster was doubtful; therefore, McComb Financial concluded that dismissal would be in the parties' best interest. (Mot. to Dismiss Adversary at 2). The Court entered the Order of Dismissal (Adv. Dkt. 88) on May 9, 2017.[6] There is no dispute that the dismissal of the Adversary resulted in the discharge of the debt owed to McComb Financial in the Bankruptcy Case.

---

[5] Hereinafter all code sections refer to the Bankruptcy Code found at title 11 of the United States Code unless indicated otherwise.

[6] The Order of Dismissal provided that each party would pay its own costs, but did not address attorney's fees.

The Debtors filed the Motion, alleging that pursuant to § 523(d), they are entitled to reasonable attorney's fees. (Mot. at 1). Attached as an exhibit to the Motion was the Time Sheet re McComb Fin. Inc. v. Webster Southern District of Mississippi Bankruptcy Court; Case #: 16-00013 (the "Timesheet") (Mot. Ex. A). According to the Timesheet, Lee spent 32.1 hours defending the Adversary. (Timesheet at 4). At his hourly rate of $200.00 per hour, Lee claimed total attorney's fees in the amount of $6,420.00, according to the Timesheet. (*Id.*). He did not seek any costs in the Timesheet or in the Motion.

In the Response, McComb Financial argued that attorney's fees are not warranted under § 523(d) because the Complaint and the Amended Complaint were substantially justified. (Resp. at 1). According to McComb Financial, the Complaint was filed "after a thorough investigation and was substantially justified." (*Id.*). McComb Financial contended that it had a reasonable basis in law and fact for filing the Complaint, and it had a reasonable expectation that it would prevail. (*Id.* at 2). Additionally, because it is a "'mom-and-pop finance company, without significant or extensive assets," McComb Financial argued that the loans it made to Helena Webster were "quite large" for such a small company. (*Id.*). McComb Financial alleged that because the Trailer had been destroyed prior to the loans, their "conduct amounts to fraud within the meaning of 11 USC [§] 523(a) et seq[.] and shows that the adversary proceeding was well-grounded in law and in fact." (*Id.* at 3).

### III. Hearing

In support of the Motion, Lee argued at the Hearing that because McComb Financial knew or should have known that the Trailer had been destroyed or was missing before it filed the Adversary, the absence of the Trailer was not its actual reason for voluntarily dismissing the Amended Complaint. Instead, Lee argued that McComb Financial dismissed the Amended

Complaint because it did not succeed in coercing a settlement from the Debtors, which was its actual reason for filing the Adversary. Lee also argued that because no proof was presented as to what happened to the Trailer, when it was allegedly destroyed, or whether Helena Webster intended to deceive McComb Financial when she obtained the loans, McComb Financial was not substantially justified in filing the Adversary. In support of their contention that the Adversary was not substantially justified, the Debtors introduced the following exhibits into evidence: (1) the Disclosure Statement, Promissory Note and Security Agreement (the "First Loan Note") (Debtors Hr'g Ex. 1),[7] which showed that on August 23, 2011, McComb Financial loaned Helena Webster $3,802.34; (2) the Disclosure Statement, Promissory Note and Security Agreement (Debtors Hr'g Ex. 2), which showed that on May 15, 2012, McComb Financial loaned Helena Webster $5,332.00 (the "Second Loan"); (3) the Disclosure Statement, Promissory Note and Security Agreement (Debtors Hr'g Ex. 3), which showed that on July 8, 2013, McComb Financial loaned Helena Webster $5,633.33; (4) the Disclosure Statement, Promissory Note and Security Agreement (Debtors Hr'g Ex. 4), which showed that on August 19, 2014, McComb Financial loaned Helena Webster $4,701.68; and (5) the McComb Finance Loan Application (the "Loan Application") (Debtors Hr'g Ex. 5), which Helena Webster completed on August 22, 2011, the day before the First Loan Note was executed. In all four notes, Helena Webster granted McComb Financial a security interest in the Trailer.

At the Hearing, McComb Financial called as a witness Anita Wilkinson ("Wilkinson"), its manager. According to Wilkinson, McComb Financial continued to loan money to Helena Webster on the same collateral, even after Wilkinson became suspicious of whether Helena

---

[7] The exhibits entered into evidence at the Hearing by the Debtors will be cited as "(Debtors Hr'g Ex. ___)."

Webster possessed the Trailer, because Helena Webster was current on her installment payments and McComb Financial had the physical title certificate in its possession.[8] Sometime before McComb Financial made the Second Loan in 2012, Helena Webster fell behind on her payments. At that point, Wilkinson and her husband attempted to locate the Trailer, but they were unsuccessful. Once Helena Webster made the delinquent payment, McComb Financial loaned her additional money, secured by the Trailer—even though Wilkinson had been unable to locate its whereabouts. Wilkinson explained that Helena Webster completed the Loan Application prior to the First Loan Note. According to Wilkinson, she verified the information contained in the Loan Application prior to making the first loan by requiring check stubs and other documents, as well as requiring Helena Webster to give her the Certificate of Title to the Trailer. Helena Webster completed a loan application before McComb Financial made each of the subsequent loans, but Wilkinson did not verify that the information provided in those subsequent applications was correct before making the loans. According to Lee, only the Loan Application was provided to him through discovery—the subsequent loan applications were not.

Wilkinson also testified that Kenny Webster should not have been named as a defendant in the Adversary because he was not involved in obtaining any of the loans. Wilkinson stated that that when she made the loans to Helena Webster, she did not suspect that Helena Webster had the intent to defraud McComb Financial. (Hr'g at 10:38:00).[9] In fact, when she made the loans to Helena Webster, Wilkinson did not suspect that Helena Webster intended to deceive her. (*Id.*). Finally, she testified that McComb Financial dismissed the Amended Complaint against Helena

---

[8] A copy of the Certificate of Title to the Trailer was attached as an exhibit to the Amended Complaint but was not introduced into evidence at the Hearing.

[9] The Hearing was not transcribed. Citations are to the timestamp of the official audio recording.

Webster for several reasons, which included the death of her husband in November 2016, her own health issues, Lazarus' health, and the unlikelihood of recovering any money from Helena Webster.

**Discussion**

Section 523(d) states that "[i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fees for, the proceeding if the court finds that the position of the creditor was not substantially justified . . . ." 11 U.S.C. § 523(d). It also provides that a court will not award costs and fees if "special circumstances would make the award unjust." *Id.* To be entitled to attorney's fees, the Debtors must show the following elements: (1) McComb Financial requested a determination of the dischargeability of the debt under § 523(a)(2); (2) the debt is a consumer debt; and (3) the debt was discharged. 4 COLLIER ON BANKRUPTCY ¶ 523.08[8] (16th ed. 2016); *see County Credit, LLC v. Martin (In re Martin)*, Adv. Proc. No. 13-00090-NPO, slip op. at *20 (Bankr. S.D. Miss. Oct. 24, 2016). Once those elements are established, the burden shifts to McComb Financial "to prove either that its position was substantially justified or that special circumstances exist that would make an award of costs and attorney fees unjust." *Id.*

Because McComb Financial conceded that the Debtors met their initial burden to prove the aforementioned three (3) elements, the burden shifted to McComb Financial to show that attorney's fees should not be awarded under §523(d) based on substantial justification or special circumstances. The Court will first determine whether McComb Financial was substantially justified in bringing the Adversary based on the fact that Helena Webster purportedly did not have possession of the Trailer when she pledged it as collateral. If the Court finds that McComb

Financial was not substantially justified, the Court will then determine whether any special circumstances exist that would make the award of attorney's fees unjust. If McComb Financial's position was not substantially justified and no special circumstances exist, the Court will address the proper amount of attorney's fees to award to the Debtors, which is ultimately a matter left to the Court's discretion.

**I.      No Substantial Justification**

Under § 523(d), it is not enough that a party is justified in bringing a proceeding; instead, the party must be *substantially* justified. This standard "incorporates the standard established by the Equal Access to Justice Act." *Carthage Bank v. Kirkland*, 121 B.R. 496, 499 (S.D. Miss. 1990). Under this standard, a party must be "justified in substance or in the main" or, in other words, "justified to a degree that could satisfy a reasonable person." *Perales v. Casillas*, 950 F.2d 1066, 1073 (5th Cir. 1992) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  This standard does not require the Court to find that McComb Financial acted in bad faith or acted frivolously. *Eric D. Fein, P.C. & Assocs. v. Young (In re Young)*, 425 B.R. 811, 819 (Bankr. E.D. Tex. 2010). The Debtors are entitled to an award of attorney's fees if McComb Financial "proceeded past a point where it knew, or should have known, that it could not carry its burden of proof." *Id.* (quoting *AT&T Universal Card Servs., Inc. v. Nguyen (In re Nguyen)*, 235 B.R. 76, 91 (Bankr. N.D. Cal. 1999)). In order for McComb Financial to show that it was substantially justified, it must show that its claim had a reasonable basis in both law and fact. *Pierce*, 487 U.S. at 565.

The Court recently addressed § 523(d) in *Country Credit, LLC v. Martin (In re Martin)*, Adv. No. 13-00090-NPO (Bankr. S.D. Miss. Oct. 24, 2016), where it awarded the debtor attorney's fees after finding that the creditor was not substantially justified in bringing its nondischargeability claim. Before determining that the debtor was entitled to attorney's fees, the Court ruled on the

creditor's nondischargeability complaint. The Court concluded that the creditor failed to satisfy its burden to prove the elements of its claim by a preponderance of the evidence and held that the debt was dischargeable. *Country Credit, LLC v. Martin (In re Martin)*, 313 B.R. 303 (Bankr. S.D. Miss. 2014). Specifically, the Court concluded that the creditor failed to prove the debtor's intent to deceive the creditor. *Id.* at 315. Subsequently, both the United States District Court for the Southern District of Mississippi and the Fifth Circuit Court of Appeals affirmed this Court's decision. *See* Case No. 3:14-cv-00709-CWR-LRA, 2015 WL 5656003 (S.D. Miss. Sept. 24, 2015); 651 F. App'x 279 (5th Cir. 2016).

In its fifty-two page opinion awarding attorney's fees, the Court discussed the standards for "substantial justification" and concluded that because the creditor should have known it could not prove the "intent" element of its nondischargeability claim, it was not substantially justified in filing an adversary. *In re Martin*, Adv. No. 13-00090-NPO, slip op. (Bankr. S.D. Miss. Oct. 24, 2016) "The Court is not required to find that [the creditor] acted in bad faith or frivolously in order to award attorneys' fees . . . under § 523(d). . . . Instead, the Court is only required to determine that [the creditor] proceeded past a point where it knew, or should have known, that it could not carry its burden of proof.'" *Id.,* at *21 (quotations omitted). In the Adversary, the Court will separately analyze whether McComb Financial was substantially justified in bringing a claim against either Kenny Webster or Helena Webster.

### A. Kenny Webster

The Court dismissed Kenny Webster as a defendant in the Adversary on March 22, 2017, because McComb Financial failed to state a claim on which relief could be granted against him. (Order at 7). Although Kenny Webster was named as a defendant, he was not mentioned in any of the factual allegations in the Complaint or the Amended Complaint. (*Id.*). As the Court found

in the Order, Kenny Webster did not apply for any loan from McComb Financial — only Helena Webster applied for loans from McComb Financial. According to Wilkinson, she granted the loans to Helena Webster and Kenny Webster was not involved in the process. Wilkinson admitted at the Hearing that Kenny Webster should not have been named as a defendant in the Adversary, which is tantamount to an admission that McComb Financial was not substantially justified in bringing a claim against him in the Adversary.

### B. Helena Webster

Helena Webster applied for the loans and granted McComb Financial a security interest in the Trailer. In the Complaint and the Amended Complaint, McComb Financial alleged that the loans were nondischargeable under § 523(a)(2)(A) and (B). Had it not voluntarily dismissed the Adversary, McComb Financial would have had the burden to prove that Helena Webster had the intent to deceive when she obtained the loans from McComb Financial. McComb Financial, however, did not present any evidence regarding Helena Webster's intent. Indeed, Wilkinson testified at the Hearing that Helena Webster was a "good customer" and that she did not suspect that Helena Webster intended to deceive her when she made any of the four (4) loans. (Hr'g at 10:38:00). McComb Financial's lack of evidence as to Helena Webster's intent, an essential element of the claim, indicates that it was not substantially justified in initiating the Adversary.

The Court previously has noted that a creditor's lack of an investigation may be an indication that there is no reasonable basis for the facts and allegations asserted in a complaint. *See Country Credit, LLC v. Martin (In re Martin)*, Adv. No. 13-00090-NPO, slip op. (Bankr. S.D. Miss. Oct. 24, 2016). The Court held in *Country Credit* that an award of attorney's fees was warranted when the creditor made no attempt to obtain the information that would have been essential to the lawsuit. *Id.* at *23-24. In *Country Credit,* the creditor failed to conduct a

reasonable investigation prior to issuing a loan to the debtor, and should have requested additional information. *Id.* *22-23. The Court concluded that the debtor lacked the intent to deceive the creditor about his child support obligations when he applied for a loan, and had it conducted a reasonable investigation, "it would have realized that the Debtor owed child support." *Id.* "Instead, [the creditor] conducted no reasonable inquiry or investigation, and its own lack of diligence gave rise to the issues it claims existed in the [loan application] and other [l]oan documents." *Id.* Much like the creditor in *Country Credit*, McComb Financial should have conducted an investigation to confirm the existence of the collateral. Its failure to do so at least contributed to its current situation.

Wilkinson admitted that she did not confirm that the Trailer existed prior to executing the First Loan Note, other than her taking possession of the Certificate of Title to the Trailer. Under the holding of *Country Credit,* McComb Financial's lack of due diligence before executing the First Loan Note alone would be a sufficient basis to award attorney's fees, but additional evidence bolsters the Court's reasoning. An investigation became even more critical once McComb Financial had reason to suspect that its collateral was missing. Wilkinson testified that Helena Webster defaulted on one of her loans in 2012. At that point, Wilkinson and her husband drove to Helena Webster's home to attempt to locate the Trailer. According to Wilkinson, they were unable to confirm the existence of the Trailer, and, when asked, Helena Webster told her only that the Trailer was "in the woods." (Hr'g at 10:31:10). Wilkinson acknowledged that she did not attempt to confirm the truth of this statement, but instead took Helena Webster at her word. (*Id.*). Moreover, even though she questioned whether the Trailer existed after she was unable to "lay eyes on" it, she nonetheless made three (3) more loans to Helena Webster after that date. (*Id.*).

The fact that McComb Financial made additional loans to Helena Webster after Wilkinson was unable to locate the Trailer indicates a lack of due diligence.

Additionally, other than Wilkinson's testimony, McComb Financial presented no evidence at the Hearing to support its argument. It is unknown to the Court what happened to the Trailer or when it purportedly went missing. Thus, it is unknown whether Helena Webster knew the Trailer was missing and, therefore, whether she had the intent to deceive McComb Financial when she obtained any of the loans. McComb Financial had the burden to prove that it was substantially justified in bringing its nondischargeability claim against Helena Webster, but it presented no evidence other than Wilkinson's testimony. Wilkinson admitted that she loaned Helena Webster money after she suspected that the Trailer was no longer in her possession.

Finally, as the Court noted in *Country Credit,* the purpose of § 523(d) "is to discourage creditors from bringing objectively weak false financial statement exception litigation in the hopes of extracting a settlement from a debtor anxious to avoid paying attorney's fees to defend the action." 4 COLLIER ON BANKRUPTCY ¶ 523.08[8] (16th ed. 2016); *Country Credit,* Adv. No. 13-00090-NPO, slip op. at *20. "In the absence of section 523(d), the threat of litigation over the discharge exception of section 523(a)(2) and the attendant costs of litigation could induce debtors to settle for a reduced sum. Thus, creditors with marginal cases could compel at least part of their claims to be excepted from discharge or reaffirmed, despite the weakness of their cases." *Country Credit,* Adv. No. 13-00090, slip op. at *20 (citing 4 COLLIER ON BANKRUPTCY ¶ 523.08[8]).

Other than Wilkinson's testimony, McComb Financial presented no evidence to support its claim, which Lee argued demonstrates that it hoped to extract a settlement from the Debtors. By failing to conduct an investigation prior to granting Helena Webster additional loans after becoming suspicious of the Trailer's existence, and by filing the Adversary without determining

whether evidence existed to support a finding of fraud, McComb Financial proceeded past a point where it should have known it could not carry its burden of proof. Based on the Court's holding in *In re Martin,* it is clear that McComb Financial was not substantially justified in initiating the Adversary.

## II.     No Special Circumstances

Even if McComb Financial was not substantially justified in initiating the Adversary, § 523(d) permits the Court to deny an award of attorney's fees if special circumstances exist that would make the award unjust. "If the creditor has a sound case, acts in good faith, and has not been guilty of abusive practices in obtaining a false statement, the court is permitted to deny judgment for costs and attorney's fees even though the debtor may ultimately prevail at trial." 4 COLLIER ON BANKRUPTCY ¶ 523.08[8]. In *Universal Card Services v. Akins (In re Akins)*, 235 B.R. 866 (Bankr. W.D. Tex. 1999), the bankruptcy court ruled that the creditor was not substantially justified and no special circumstances existed when the credit card company enticed the debtor to use her credit card, despite her reluctance. The bankruptcy court in that case found that the creditor's action was "nothing more than persecuting an unfortunate honest debtor and blaming that debtor for [its] own casual and inadequate lending practices." *Id.* at 876 (quotation omitted).   Similarly, McComb Financial had attempted to prosecute a claim against the Debtors that resulted from its own inadequate lending practices—i.e, failing to investigate the existence of collateral, especially after it was put on notice that the collateral may not exist.

Additionally, § 523(d) only permits a finding of special circumstances "*[i]f the creditor has a sound case . . . .*" ."  4 COLLIER ON BANKRUPTCY ¶ 523.08[8] (emphasis added).  Here, McComb Financial did not verify the existence of the Trailer at any point and has offered no proof as to what happened to the Trailer.  As the Court discussed in Section I above, McComb Financial

did not have a sound case, as evidenced by the following: (1) despite naming Kenny Webster as a defendant in the Adversary, it alleged absolutely no claims against him, resulting in the Order in which the Court dismissed Kenny Webster as a defendant in the Adversary; (2) it presented no evidence to support an essential element of its claim; and (3) it presented no evidence regarding what happened to the Trailer or who was responsible for its alleged destruction. The Court, therefore, finds that no special circumstances exist in the Adversary that would make an award of attorney's fees unjust.

### III.     Amount of Attorney's Fees

The attorney's fees requested by Lee in the Adversary are reasonable, and he is entitled to the full $6,420.00 he requested.[10] "In the bankruptcy arena, courts use the 'lodestar' method, described by the U.S. Supreme Court as the 'guiding light of our fee-shifting jurisprudence.'" *Huffman v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman)*, Adv. Proc.. 12-00099-NPO, 2014 WL 1767694, at *3 (Bankr. S.D. Miss. May 2, 2014) (quoting *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542 (2010)). The lodestar is "equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." CRG Partners Grp., L.L.C. v. Neery (*In re Pilgrim's Pride Corp.*), 690 F.3d 650, 655 (5th Cir. 2012) (quoting *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987)). McComb Financial did not contest Lee's hourly billing rate or the number of hours billed. In the Affidavit, Lee testified that he has been practicing law for approximately fourteen (14) years and approximately eleven (11) of those years have been before the Bankruptcy Court (Aff. at 1). A billing rate of $200.00 per hour has been considered an acceptable market rate by this Court, and all of the hours billed by Lee were reasonably

---

[10] $200.00 per hour x 32.1 hours = $6,420.00.

Page 15 of 17

expended. *See In re Huffman*, 2014 W.L 1767694, at *4. The $6,420.00 amount he charged, therefore, is presumptively reasonable. *Perdue*, 559 U.S. at 554.

The lodestar amount may be adjusted up or down based on the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *In re Pilgrim's Pride Corp.*, 690 F.3d at 656. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases. *Id.* (citing *Johnson,* 488 F.2d 717-19). The second, third, eighth, and ninth factors are fully reflected in the lodestar amount, and generally will not justify a deviation. *See Id.* In the Adversary, nothing was presented to overcome the presumption in favor of the lodestar amount, and no exceptional circumstances justifying an upward or downward deviation are apparent. Therefore, the Court finds that the Debtors are entitled to the entirety of the attorney's fees requested.

**Conclusion**

McComb Financial filed this Adversary against Kenny Webster, but it did not plead any allegations against him in the Complaint or Amended Complaint. Wilkinson admitted at the Hearing that he should not have been named as a defendant in the Adversary. Nonetheless, Lee spent a significant amount of time defending Kenny Webster. Lee also spent a significant amount of time defending Helena Webster, even though McComb Financial failed to offer any evidence

regarding her intent to deceive or what happened to the Trailer. The Court finds that McComb Financial was not substantially justified in initiating the Adversary and that there are no special circumstances that would make an award of attorney's fees unjust. It should have known that it could not carry its burden of proving that the Debtors violated § 523(a)(2), causing the Debtors to incur $6,420.00 in attorney's fees. The Court concludes that the Debtors are entitled reasonable attorney's fees incurred as a result of litigating the Adversary under § 523(d). After reviewing the pleadings and the testimony, and applying the lodestar method and the *Johnson* factors, the Court concludes that the $6,420.00 in attorney's fees requested by the Debtors is reasonable. A billing rate of $200.00 per hour is comparable to, or below, the prevailing market rates in this community, and the amount of hours billed in the Adversary is reasonable. Therefore, the Court finds that the Motion should be granted, and the Debtors should be awarded attorney's fees in the amount of $6,420.00.

A separate final judgment consistent with this Opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

##END OF OPINION##